## F. HUGHES MURPHY v. ASHEVILLE-KNOXVILLE COACH COMPANY, INCORPORATED, AND J. H. POSTON.

(Filed 27 January, 1931.)

**1. Highways B j—Evidence of negligence and contributory negligence held properly submitted to the jury in this case.**

In an action to recover damages for the alleged negligence of the defendant driving a passenger bus upon a public highway in stopping, or nearly so, and not heeding plaintiff's signal to pass, forcing the plaintiff in so doing onto a side of the road near a bridge across a stream, so that to avoid the stream the plaintiff was forced upon the bridge

running along side of the defendant's bus, which by its negligent driving forced the plaintiff's car through the railing of the bridge into the stream causing the injury complained of, with evidence to the contrary that it was the negligence of the plaintiff in not observing the rules of the road that caused said injury, *Held:* the issues were raised for the determination of the jury as to the defendant's negligence, or the plaintiff's contributory negligence as the proximate cause of the injury, and defendant's motion as of nonsuit made under the provisions of the statute was properly denied. C. S., 567.

**2. Negligence C d—The burden of proving contributory negligence is on the defendant.**

The burden of showing contributory negligence is on the defendant when relied on by him, and where the evidence is insufficient to establish contributory negligence barring recovery as a matter of law the defendant's motion as of nonsuit will be denied.

**3. Highways B a—Failure to give or observe signal for passing car going in same direction is negligence.**

The failure to give or observe the signals required by the statute to be given upon the highway by drivers of automobiles desiring to pass other automobiles going in the same direction upon the highway and other requirements for the safety of travel thereon is negligence, and actionable when the proximate cause of injury.

**4. Highways B d—Failure to give statutory signals when stopping or turning off highway is negligence.**

One driving an automobile upon a public highway is required by the common law to use care for the safety of pedestrians and the other drivers of automobiles and vehicles thereon, and by provision of statute to give specific signals before stopping or turning thereon, Michie Code, 2631(59) (a), and the failure of one so driving to give the signal required by statute is negligence, and when the proximate cause of injury damages may be recovered therefor by the one injured.

**5. Same—Failure to give statutory signal for stopping is actionable negligence when the proximate cause of injury.**

The driver of an automobile upon the public highways of the State, before starting or stopping or turning from a direct line is required to first see that such movement can be safely made, and give the statutory signals clearly visible to those who may be affected thereby, and when a driver of an automobile fails to observe these statutory regulations in coming to a near stop and such failure is the proximate cause of an injury to another endeavoring to pass, it constitutes actionable negligence.

**6. Negligence C a—Contributory negligence is the failure of the plaintiff to exercise care of ordinarily prudent man under the circumstances.**

In an action to recover damages against defendant for its driver's negligence in driving its bus upon the State highway, and the plaintiff's contributory negligence is pleaded in bar of recovery, the test of the defense is whether the plaintiff failed to exercise that degree of care that an ordinarily prudent man would have observed under similar circumstances, and if such failure was the proximate cause of the injury in suit, the burden of proof being on the defendant.

Murphy *v.* Coach Co.

**7. Highways B d—Swerving bus to one side is not negligence when made necessary for protection of passengers by negligence of plaintiff.**

Where there is evidence tending to show that the defendant's auto-truck was forced to attempt to cross a bridge over a highway with defendant's passenger bus going in the same direction and that in so doing the plaintiff's truck struck the defendant's bus, *Held:* under the facts of this case an instruction was correct that the defendant's driver of the bus would not be negligent in swerving the bus to one side if such were necessary for his protection and the protection of his passengers.

**8. Highways B b—Duty of driver passing intersection of State highways.**

Where the driver of a motor vehicle in going to his destination must cross a public highway at its intersection with another road, it is required of him that he may cross over with due regard to the safety of others using the highway.

**9. Appeal and Error J e—Error, if any, in instructions in this case held harmless.**

Under the evidence in this case *Held:* a question asked the court by the jury which had received the case, and pending their deliberation, if they should consider an intersecting highway the center of the road leading the other way, *Held:* the reply of the court that it was for them to determine under the facts and circumstances of the case, if error, was not prejudicial or reversible.

**10. Trial E g—Where charge is correct when construed as a whole it will not be held for error.**

When the charge of the judge to the jury is correct when considered as a whole it will not be held for reversible error if certain matters therein, taken disjointedly therefrom, may not be technically correct.

Appeal by defendants from *Oglesby, J.,* and a jury, at July Term, 1930, of Buncombe. No error.

This is an action for actionable negligence brought by plaintiff against defendants for injuries sustained on or about 19 April, 1929. The plaintiff was the driver and operator of a truck for one L. H. Hudson. The defendant Asheville-Knoxville Coach Company was engaged in the business of a common carrier and ran a bus line. The defendant J. H. Poston was the driver and operator of the bus that collided with plaintiff's truck, which it is alleged caused the injury to plaintiff, for which this action is instituted.

The plaintiff alleges, in part: That the said defendant, J. H. Poston, while operating the coach, a very large motor bus, belonging to his co-defendant, Asheville-Knoxville Coach Company, Inc., was proceeding in a westerly direction upon State Highway No. 20, and after proceeding for some distance just in front of the truck which was being operated by the plaintiff, the said defendant, with full knowledge that the truck of the said plaintiff was proceeding upon said highway No. 20, in the same direction as that upon which he, the said defendant, was proceeding,

recklessly, negligently and without any regard to the safety of the plaintiff, suddenly stopped said motor bus, or coach, without giving to the plaintiff any signal of his intention to do so. That the said defendant after suddenly stopping said motor bus, or coach, as aforesaid, without giving the signal required by law, or any signal, and after the plaintiff had approached within a short distance of the said coach of the defendants, and after making known his intention to said defendants, this plaintiff attempted to drive by and pass said passenger coach of said defendants, whereupon after said plaintiff was in the act of driving by the said defendants' coach, while the same was at a standstill, the said defendant, through its operator, driver and agent, suddenly started said coach, and in starting same pulled it into the road in front of the truck which this plaintiff was driving, and making it impossible for him to turn his said truck to the right, as he had intended to do, and proceed upon the road up Laurel River, leading to the Tennessee line, and Greenville. And the defendant, by suddenly starting said motor bus and coach, forced the plaintiff, who, in order to avoid a collision between said motor bus and said truck, to proceed along State Highway No. 20, and onto the bridge which spans Laurel River. That the said defendant, after negligently stopping the motor bus, as aforesaid, without giving any signal, and notwithstanding the fact that he suddenly started the same, while this plaintiff was passing with his said truck, without giving any signal, and in violation of the law, and after the said defendants saw the plaintiff in a perilous condition, which was caused by the negligence of the said defendant, the said defendant proceeded with much force and power on said bridge, and by the negligent operation of his said motor bus caught some portion of the truck which this plaintiff was driving, with said motor bus, and notwithstanding the fact that the said plaintiff did all in his power to stop said truck, yet the said defendant negligently caught and pulled the said truck, which the plaintiff was driving, on said bridge, and nearly across the same, in fact more than one hundred feet thereon, and while thus negligently pulling the said truck of said plaintiff, the said defendant swerved his said bus to the left upon said bridge, until, by so doing, he forced the truck which this plaintiff was driving off said bridge, and caused it to fall, with this plaintiff, into Laurel River. . . . That all the plaintiff's said injuries were due to the wanton, wilful, reckless and negligent conduct of the said defendants in: (A) Stopping his said coach, or motor bus, without giving any signal, as required by law. (B) In that after stopping the said motor bus he negligently and recklessly, and without regard to the law or the rights of the plaintiff, suddenly started said motor bus while the plaintiff was in the act of passing same, and pulling said motor bus directly in front of the said plaintiff, and his moving truck,

as hereinbefore alleged. (C) In that after he caused his motor bus to collide with the truck driven by the plaintiff, and to become engaged therewith, he refused to slow down said motor bus, but, on the contrary, continued to apply power thereto, so that the plaintiff was unable to stop his said truck, as aforesaid. (D) For that the defendant operated his said motor bus while on the said bridge crossing Laurel River, recklessly and negligently, and swerved the same to the left until it actually forced the truck, driven by the said plaintiff, off the side of said bridge, and caused it to fall, with the plaintiff, into Laurel River, as aforesaid.

The material allegations of the negligence charged by plaintiff in the complaint were denied by defendants. The defendants further answer and set up the plea of contributory negligence and also counterclaim: "That the injuries of the plaintiff were not caused by any negligence of the defendants, but were caused directly and proximately by the gross and inexcusable negligence and reckless driving of the plaintiff, in that, while the defendants were operating a bus on Highway No. 20, between Marshall and Hot Springs, which was going down a mountain grade full of curves, the plaintiff negligently and recklessly attempted to pass the defendants and negligently ran his truck into the left side of the defendants' bus and through the bridge and into Laurel River; that among the acts and things constituting the negligence of said plaintiff are the following: (a) Negligently driving his truck at a reckless and unlawful rate of speed: (b) negligently attempting to pass the defendants' bus on a heavy mountain grade full of curves in a reckless, improper and unlawful manner; (c) negligently failing to give any signal of an intention to attempt to pass the defendants' bus; (d) negligently driving his truck into the left side of the defendants' bus while the defendants' bus was being driven properly along Highway No. 20, with terrific force and in a dangerous and reckless manner; (e) negligently failing to keep his truck under proper control in going down the mountain grade where the said collision occurred; (f) negligently and unlawfully failing to slow up and sound any signal and take the precaution required by law and the rules of ordinary care in approaching the bridge across the Laurel River; (g) negligently driving his truck off the bridge over Laurel River and through the supports along the side of the bridge and into said Laurel River. That if the plaintiff was in any way injured by the negligence of the defendants, which, however, is most vigorously and strenuously denied, the said plaintiff contributed to his own injuries by the negligence of the plaintiff, which directly and proximately caused the said injuries in the particulars above mentioned. And the defendants plead said acts of contributory negligence in bar of any recovery in this action. That by reason of the

acts and negligence of the plaintiff hereinbefore referred to, the said plaintiff damaged the bus of defendants in the sum of five hundred dollars ($500.00)."

The issues submitted to the jury and their answers thereto, were as follows:

"1. Was the plaintiff injured by the negligence of the defendants, as alleged in the complaint? Answer: Yes.

2. Did the plaintiff by his own negligence contribute to his injury, as alleged in the answer? Answer: No.

3. What damage, if any, is the plaintiff entitled to recover of the defendants? Answer: Six thousand, five hundred dollars ($6,500).

4. Was the bus of defendant, Asheville-Knoxville Coach Company, Inc., damaged by the negligence of the plaintiff, as alleged in the answer? Answer: No.

5. What damage, if any, is the Asheville-Knoxville Coach Company, Inc., entitled to recover of the plaintiff? Answer: None."

The court below rendered judgment on the verdict. Defendants made numerous exceptions and assignments of error on the trial below and appealed to the Supreme Court.

The material facts and assignments of error as a whole will be considered in the opinion.

*G. Lyle Jones and J. E. Swain for plaintiff.*
*Bernard, Williams & Wright for defendants.*

CLARKSON, J. The evidence on the part of the plaintiff was to the effect that he was operating, for one L. H. Hudson, a Hup truck, weighing about 2½ tons, filled with stone, and was going from Walnut Gap Quarry and down the mountain, on highway No. 20, to Laurel River bridge to take the stone on highway No. 208 to the road work on the Little Laurel River, and was injured at about 2:30 in the afternoon of 19 April, 1929. He was going down the mountain to the intersection of highways Nos. 20 and 208 at Laurel River bridge. Highway No. 20 went from Asheville to Knoxville, Tenn., and highway No. 208 intersected it at Laurel River bridge and went west along the bank in a northerly direction to Greenville, Tenn. His course, when he arrived at the intersection of Nos. 20 and 208, Laurel River bridge was to turn to the right and go up the bank of Laurel River in a northerly direction on No. 208 to the road work. Just before reaching the intersection of Nos. 20 and 208, at the Laurel River bridge, highway No. 20 was 22 feet wide, and from the center of the bridge across the intersection was 36 feet and entering No. 208 was 24 feet wide. The bus was going on No. 20 to Knoxville, and the course of the bus, when the driver arrived

4—200

at the intersection of Nos. 20 and 208, was to turn to the left and cross over the bridge at Laurel River and follow No. 20 on to Knoxville— the course of the truck was to turn to the right and follow No. 208 to the road work where the road was being graveled. The bus was longer than the truck. The bus passed the truck some distance up the mountain, and the grade down the mountain was pretty heavy. Poston knew the truck was coming behind him.

Plaintiff described the impact and what occurred at the time, in part, as follows:. "When the defendant approached this bridge, he was driving. He was wobbling all over the road. He was wobbling around the road. He slowed down and stopped right here, just at the intersection of the bridge. When he slowed down and stopped at that point, I reached down, blowed my horn and started to pass. He cut across the road to the left in front of me. Q. Did he show any signal or make any sound at all? A. No, I did not see any. No sir. He was where I could see him. I was looking at him. When I started to go past him he cut across the road in front of me with the bus, when he cut across the road in front of me, I did not have no room to go by nor get on the bridge either. The right corner of my bumper hit the bus. I cut out and got on the bridge. He caught my tail gate and shoved me off the bridge. I turned onto the bridge. . . . I had my brakes on all I could get them on. The brakes were working; both wheels were sliding, I mean I had them locked. . . . The bus and truck came apart when he knocked me off the bridge, when the truck went over the bridge. I was still on that truck when I went over that bridge. I went in the water. . . . I operated my truck with my right foot. I operated my clutch with my left foot. I set my foot on the clutch and blowed my horn at the same time. The bus passed me somewhere on one of those curves—I don't know where. . . . I was not going so fast I don't think; something like 15 or 20 an hour, down the mountain. . . . There was no place for me to go. He cut right in front of me. . . . I guess he was about 30 feet from the bridge when he stopped. I thought he was going on toward Greenville. . . . I started to pass. When I started to pass him he cut in front of me. I am certain he stopped. I don't know whether he took on any passengers or not. Nobody was standing by the side of the road. I couldn't see on the right-hand side whether he was taking on passengers or letting off passengers. We followed one another down the mountain, I don't know how far. He was standing still when I started to pass. When I started by the truck I was traveling at the rate of 8 or 10. We both went on the bridge side by side. . . . When he first pulled in front of me on the bridge, I kind of glanced to get on the bridge to keep from knocking off in the river. I was not off my road when this happened.

. . . The reason I left the Greenville road was that he cut me off the Greenville road. I didn't have anywhere to go except that bridge to keep—unless I went in the river."

W. C. Ledbetter, a witness for plaintiff, testified, in part: "From the skid marks of the truck you could see the outside or upper marks that the truck had made in going across the bridge. They were about three feet or something like that from the left-hand rail. You could see the skid marks of the wheel that was nearest to that timber, that is the one I was talking about. It was about three and a half or four feet after it went on the bridge. The skid marks continued along that side 10 or 12 feet. I noticed then where the truck had got on top of this guard rail, the front axle had, and had turned off those bannisters for eight or ten feet before it had gone over. It had gone I guess 55 feet before it turned over. The bridge is 80 feet long."

C. B. Bennett, for plaintiff, testified, in part: "When I got down a little piece and looked over and saw the bus standing there and saw the truck, just saw the wheels. It was turned up. I went down, turned my truck across the bridge, parked and Mr. Poston, the bus driver, came walking from the bus. I said 'Where is the driver at?' He said 'He is in the river.' I said, 'Let's get him out.' He said 'Hell, it is not any use, he is done drowned.' He said there was not any use, with an oath to it, that he was done drowned. I said, 'I am going to try to get him out.' . . . About that time Mr. Ingle drove up. Ledbetter was not far behind him. They came down there and Mr. Murphy's brother and Mr. Ledbetter came to the water and got him. All the time I was holding his head. Poston did not come down there. . . . I talked to Mr. Poston, he was drinking, I smelled it."

There was other evidence corroborating plaintiff. This evidence was to the way the collision occurred, and as to the drinking, was denied by defendant Poston, and his evidence was corroborated by witnesses, and the further fact that he had not been drinking.

Defendants' evidence was to the effect that the bus was on the right-hand side of the center of No. 20 and it had slowed down to 10 miles an hour, and never stopped, and when it turned at the intersection of highways 20 and 208 to continue on No. 20 and cross the bridge over Laurel River, the driver, Poston, gave proper warning and used due care, and plaintiff ran the truck into the left side of the bus in front of the rear wheel.

The evidence of plaintiff sustained his allegations, as alleged in the complaint, and the evidence of defendants sustained their allegations as alleged in the answer. The defendants, at the close of plaintiff's evidence and at the close of all the evidence, made motions in the court below for judgment as in case of nonsuit, C. S., 567, which the court

overruled. In this we can see no error. The controversy was one of fact, which it was the province of the jury to determine. The questions of negligence, contributory negligence and proximate cause were sufficient to be submitted to the jury.

"It is the well settled rule of practice and accepted position in this jurisdiction, that, on a motion to nonsuit, the evidence which makes for the plaintiff's claim and which tends to support her cause of action, whether offered by the plaintiff or elicited from the defendant's witnesses, will be taken and considered in its most favorable light for the plaintiff, and she is 'entitled to the benefit of every reasonable intendment upon the evidence, and every reasonable inference to be drawn therefrom.'" *Nash v. Royster,* 189 N. C., at p. 410; *Abel v. Dworsky,* 195 N. C., at p. 867.

In *Butner v. R. R.,* 199 N. C., at p. 697, it is said: "In an action for the recovery of damages resulting from injuries caused by the negligence of the defendant, where the defendant relies upon the contributory negligence of the plaintiff, as a bar to his recovery, the burden is upon the defendant on the issue involving this defense. It is so provided in this State by statute. C. S., 523. Ordinarily, the question whether plaintiff was guilty of contributory negligence is to be determined by the jury. It is only when a clear case of contributory negligence has been made out by the evidence offered by the plaintiff,. that a motion by the defendant for judgment as of nonsuit, on that ground, should be allowed."

The law of the road applicable to the facts, on plaintiff's evidence, is set forth in Public Laws 1927, chap. 148, sec. 17 (N. C. Code, 1927, Michie, annotated, C. S., 2621(59): "(a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section plainly visible to the driver of such other vehicle of the intention to make such movement. (b) The signal herein required shall be given by means of the hand and arm in the manner herein specified: Whenever the signal is given the driver shall indicate his intention to start, stop, or turn by extending the hand and arm from and beyond the left side of the vehicle as hereinafter set forth: Left turn—hand and arm horizontal forefinger pointing. Right turn—hand and arm pointed upward. Stop—hand and arm pointed downward. All signals to be given from left side of vehicle during last fifty feet traveled."

The court below on the first issue, defined (1) negligence, (2) proximate cause, and charged: "The court further instructs you that a violation of a section of a statute made and intended for the protection of life and property on a highway is negligence and that if it is the proximate cause of an injury, the proximate cause of damage, it is actionable negligence."

The court below on this aspect, charged the jury: "The court instructs you that the driver of a vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section plainly visible to the driver of such other vehicle of the intention to make such movement. The signal required for stopping a motor vehicle under the section which the court has just read to you is hand and arm pointed downward and that signal to be given from the left side of the vehicle during the last fifty feet traveled. Plaintiff says and contends that defendant, Poston, violated this section of the statute and that such violation was the proximate cause of his injury. The court instructs you that if you find · the defendant Poston violated this section of the statute and that such violation was the proximate cause of the injury to the plaintiff, that it would constitute actionable negligence. The court further instructs you that if you find that defendants' bus stopped and then started to pull across the road in front of the truck driven by the plaintiff without giving signal required by the statute, that is, with the hand and arm horizontal with forefinger pointed, signal given to the left of the vehicle, it would constitute negligence, and if it was the proximate cause of the injury it would constitute actionable negligence. The court further instructs you that if you find plaintiff's truck was caught in the bus and the driver of the bus continued to apply power to the bus and that said act was the proximate cause of the injury and the driver of the bus could in the exercise of ordinary care have avoided the injury, it would constitute negligence. The court further instructs you if the plaintiff has satisfied you by the greater weight of the evidence that the driver of the bus was guilty of actionable negligence, put the driver in such position that he could not avoid the injury, through attempting to do so after the danger became apparent, it is not excused by a subsequent attempt. Plaintiff says and contends, as the court previously stated in giving the contentions of the parties, that he was injured by the negligence of the defendants, as alleged in the complaint and that you should answer the first issue 'Yes.' "

In reference to defendants' plea of contributory negligence the court below, on the second issue defined contributory negligence and charged the jury: "The test is, did the plaintiff fail to exercise that degree of care which an ordinarily prudent person would have exercised or employed under similar circumstances, and was his failure to do so the proximate cause of the injury. If the defendant has satisfied you that plaintiff was guilty of contributory negligence, it would be a bar to any recovery on his part to this action. The defendants say that plaintiff was guilty of contributory negligence, that he is guilty in negligently driving his truck at a reckless and unlawful rate of speed; negligently attempting to pass defendants' bus on a heavy mountain grade full of curves in a reckless, improper and unlawful manner; negligently failing to give any signal of an intention to attempt to pass the defendants' bus; that he was guilty of negligence in driving his truck in the left side of defendants' bus while the defendants' bus was being driven properly along highway No. 20; that he was guilty of negligence in failing to keep his truck under proper control in going down the mountain grade where the said collision occurred; that he was guilty of negligence in failing to slow up and sound any signal and take the precaution required by law and the rule of ordinary care in approaching the bridge across the Laurel River; that he was guilty of negligence in driving his truck off the bridge. That his acts were the cause of the injury and not negligent acts on the part of the defendants. That the statute of North Carolina provides that 'any person driving a vehicle on a highway shall drive the same at a careful and prudent speed not greater than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at such a speed as to endanger the life, limb or property of any person.' · (Substantially C. S., 2618, in part.) The court instructs you if you find the plaintiff was operating his truck in violation of this section, and further find that such violation was a proximate cause of his injury, it would constitute contributory negligence. The court further instructs you that it was the duty of the defendants, Asheville-Knoxville Coach Company to slow down at the intersection of the Knoxville and Greenville highways, and that it was not negligence for the defendants to bring their bus to a near stop and then again across the intersection on the Knoxville highways across the Laurel River bridge. The court instructs you that defendant Poston had a right to do everything he could to keep the bus on the bridge after he was struck by the plaintiff if the plaintiff's negligence caused the collision between the truck and the bus. That you cannot find the defendant guilty of negligence in swerving

his bus if he did swerve on the bridge if these acts on the part of the defendant were necessary for the purpose of protecting himself and passengers in said bus from going off the bridge, if you find the plaintiff was guilty of actionable negligence in striking the bus."

In 3-4 Huddy Cyc. of Automobile Law (9 ed.—1931), sec. 145, pp. 245-6, we find: "Statutes and municipal ordinances in many cases require the driver of a motor vehicle to indicate his intention of bringing his car to a stop; and a violation of such a regulation may form a basis for a charge of negligence. Even in the absence of such a regulation, a driver is not relieved of the duty to use some care in respect to traffic in the rear; and whether the failure to give a signal to the rear is or is not negligence depends on the circumstances of the case, and usually is a question of fact for the jury. A signal that a forward vehicle is to stop should not be given unless the driver actually does so."

In the well written Law of Automobiles (North Carolina), by Vartanian, sec. 89, at pp. 193-4, we find the following: "Even in the absence of statute, the rule of the unwritten law being that the driver must exercise ordinary care to prevent collisions, it is the duty of the driver to give timely signals of warning to other drivers and pedestrians of the course to be adopted by him. He is not, for example, warranted in suddenly turning to the left without warning and without regard to conditions of travel following. It is his duty when approaching pedestrians on a public street to warn them of his approach by the sounding of a horn, gong or bell. The failure to do so constitutes negligence on his part. A pedestrian crossing at an intersection will be justified in his inference that the course of an automobile proceeding in a certain direction would not be changed without warning, especially into another street. But the burden is on the plaintiff to establish defendant's negligence in failing to warn and maintain a vigilant watch. The Uniform Act Regulating the Operation of Motor Vehicles expressly provides that the driver before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and whenever the operation of any other vehicle may be affected by such movement shall give the signals prescribed by the statute plainly visible to the driver of such other vehicle, of his intention to make such movement."

In Schwartz Trials of Automobile Accident Cases, sec. 270, in part, we find: "Regulations have been prescribed which forbid turning except at street intersections. But, even if a regulation provided for turns to be made at street intersections, they must be made with due regard to the rights of other travelers. It is held that the turning of a corner

toward the left is fraught with greater danger to other travelers than is the turning toward the right. The driver wishing to turn to the left must use reasonable care to avoid a collision with a vehicle which is approaching from his rear and attempting to pass on the left side."

The jury, after deliberation, came into the court and through its foreman, asked the court certain questions, which we think the court answered correctly as to the law. Then the following question: "(Foreman) Would we consider the highway leading to Greenville, the center of the road leading the other way? (The Court) It depends. You may consider all the conditions that you found existed. It is for you to determine where the bus was and for you to determine where the truck was. Is there anything else, gentlemen? (Foreman and jurors) No, sir."

We think, under the peculiar intersection of highways Nos. 20 and 208 at Laurel River bridge, this question led into the realm of fact that the jury had to determine. At least the question is ambiguous, considering the particular location, and we cannot hold it, if error, prejudicial or reversible.

In North Carolina the Motor Vehicle Uniform Act has been substantially adopted. Public Laws 1927, chap. 148. Michie, N. C. Code, 1927, Anno., chap. 55, art. 8, sec. 2631(43) *et seq.* See subsec. (58).

We think there was sufficient evidence to be submitted to the jury of negligence of defendants after the collision, and the court below did not err in the charge to the jury on this aspect. We think the court below did not err in declining to give all the prayers for instruction as requested by the defendants. The charge as a whole covered the law applicable to the facts. We think the court below charged the jury correctly as to negligence, contributory negligence and proximate cause, and applied the law applicable to the facts.

In a long charge, we do not think technical matters contended as errors, fished out of the charge, can be held as reversible or prejudicial error, when on the whole the charge is correct. The case seems to have been unusually well tried by the court below. The entire charge and extracts from the charge before set forth show care and painstaking in the trial below. The litigants, through their able attorneys, presented every phase of the controversy, setting forth the law and contentions. It was mainly a question of fact in the province of the jury to decide. The jury could have on the facts decided either way, but that is their province, not ours. In law we find

No error.