DESSIE AGNES MORGAN, ADMINISTRATRIX OF THE ESTATE OF ALBERT FRED MORGAN, DECEASED, v. BELL BAKERIES, INC., AND MILLER J. COOK, ORIGINAL PARTIES DEFENDANT, AND O. W. CLAYTON T/A C & S TRANSPORT COMPANY AND JOE WILLIAM FOY, ADDITIONAL PARTIES DEFENDANT.

(Filed 7 June, 1957.)

**1. Appeal and Error § 51: Trial § 22a—**

In passing on motion to nonsuit and in passing on assignment of error to the refusal of the motion, the evidence must be taken in the light most favorable to plaintiff, giving her the benefit of all reasonable inferences which may be drawn from the evidence.

**2. Automobiles § 41i—Evidence of negligence in entering highway in path of traffic, causing collision between two other vehicles, held for jury.**

The evidence tended to show that the driver of defendant's truck entered the highway from a store on the east side of the highway, traversed the north-bound lane and turned left into the south-bound lane between two tractor-trailers, traveling in opposite directions, when they were some 50 or 60 feet apart, so that the driver of the south-bound tractor-trailer, to avoid hitting the truck, suddenly applied his brakes, causing the tractor-trailer to jackknife on the wet asphalt, resulting in collision between the two tractor-trailers, in which collision the driver of the south-bound vehicle was killed. *Held:* In action by the personal representative of the deceased driver, the evidence is sufficient to be submitted to the jury on the question of whether the negligence of defendant driver was the proximate cause, or one of the proximate causes of the collision, even though his vehicle continued on its way without colliding with either of the tractor-trailers.

**3. Automobiles §§ 37, 41p—**

The identity of the vehicle as the one which was negligently operated by the driver thereof may be established by circumstantial evidence. Therefore, when the evidence tends to show that the vehicle negligently operated was a bakery truck which entered the highway from a store, evidence tending to show that bakery products of that company had just been delivered to the store, that other bakeries selling products to the store made no deliveries near the time in question, and testimony describing the trucks used in making deliveries of bakery products to the store, including the color of defendant's truck, are competent.

**4. Evidence § 42d—**

Where relevant statements made by the employee to a patrolman who interviewed him in the afternoon of the day during which the accident in suit occurred, are admitted solely against the employee and the jury instructed not to consider them against the employer, exception to the admission of the testimony cannot be sustained.

**5. Appeal and Error § 42—**

Ordinarily, the court's recital of the evidence and the statement of the contentions of the parties will not be held for error when asserted mis-

statements therein are not called to the court's attention before the case is submitted to the jury and no request for correction is made.

APPEAL by defendants from *Sink, E. J.,* October, 1956 Term, CUMBERLAND Superior Court.

Civil action to recover damages for the wrongful death of plaintiff's intestate in a motor vehicle accident alleged to have been caused by the actionable negligence of the defendants. The defendants filed a joint answer in which they denied involvement in the accident, denied negligence, and alleged contributory negligence on the part of plaintiff's intestate. The defendants, upon motion in the cause, had O. W. Clayton, trading as C & S Transport Company, and Joe William Foy made additional parties defendant for purpose of contribution as joint tort-feasors. At the close of all the evidence the court entered an order dismissing the cross action as to the additional defendants. From that order, there was no appeal. The jury answered issues of negligence, contributory negligence, and damages in favor of the plaintiff. From the judgment on the verdict, the defendants appealed.

*Cooke & Cooke,*
*By: Arthur O. Cooke,*
*King, Adams, Kleemeier & Hagan,*
*By: Charles T. Hagan, Jr., for plaintiff, appellee.*
*Varser, McIntyre, Henry & Hedgpeth, for defendants, appellants.*

HIGGINS, J. Appellants' assignment of error first discussed in their brief and heavily relied on in the oral argument is based upon the trial court's refusal to grant their motion for nonsuit made at the close of all the evidence. *White v. Lacey,* 245 N.C. 364, 96 S.E. 2d 1. In passing on the motion it was the duty of the trial court, and in passing on the assignments of error it is the duty of this Court, to take the evidence in the light most favorable to the plaintiff; to resolve all conflicts in her favor; and to give her the benefit of all reasonable inferences which may be drawn from the evidence. *Poindexter v. Bank,* 244 N.C. 191, 92 S.E. 2d 773.

Taking the evidence in the light most favorable to the plaintiff, it discloses the following: North Carolina Highway No. 87 between Fayetteville and Elizabethtown is of asphalt surface, 22 feet wide. About seven miles south of Fayetteville, Burney's store is located on the east side of the highway and about 35 feet from it. On either side of the store and between it and the highway is a parking or service area. From Burney's store the highway is straight and level for about half a mile both north toward Fayetteville and south toward Elizabethtown.

At about 6:15 on the morning of 14 March, 1955, the plaintiff's intestate was driving a Southern Oil Transportation Company's combination tanker and tractor south on highway 87. A mist of rain was falling. The surface of the road was wet. As plaintiff's intestate approached the store going south, another tractor-tanker combination, owned by the C & S Transport Company and driven by Joe William Foy, approached from the south.

Joe William Foy, the driver of the C & S tanker, testified: "I came on 87 up to Burney's store. My rig was involved in a collision, I would say around six o'clock. . . . As I approached Burney's store there was a vehicle approaching me from the north (the tanker operated by plaintiff's intestate) . . . The lights on my rig were burning, . . . headlights and clearance lights. . . . The lights were burning on the vehicle approaching me. I did not see anything at Burney's store, or at or about the road there. . . . Right at Burney's store a truck ran out across the road ahead of me, I would say we (the two tanker combinations) were probably 50 or 60 feet, something like that, apart. . . . I just glimpsed this truck that came out of Burney's store as it ran across the road ahead of me. My vehicle did not strike that truck. It went across my lane. The truck that ran across the road ahead of me did not have any lights. . . . All I saw was a glimpse and just the shape of a bread truck. All I figured, just so close the man (plaintiff's intestate) hit his brakes to keep from hitting it (the bread truck) and the truck (tanker) started jackknifing and jackknifed across the road ahead of me." (Defendants' exception No. 161 is to the refusal of the court to strike the last quoted sentence. However, the defendants, from the same witness on cross-examination, brought out the following): "I swore that the oil tanker applied brakes too suddenly, in case where he was at, he had to do something. I swore and now say that he applied brakes too suddenly and jackknifed."

Susie Edwards, a witness for the plaintiff, testified that she was on her back porch "about two city blocks" from Burney's store. She heard the crash, took five or six quick steps to the front. "I saw the bread truck going on down the road. I could see the oil tankers in the ditch. . . . When I saw the bread truck it was just about as far as from here maybe to the back of the courtroom from the tankers. The bread truck was orange or some color of red like."

S. A. Burney testified in substance that about 6:15 on the morning of 14 March, 1955, he was in bed at the time the wreck occurred. His store was not open. It was the custom of the defendant Cook to make deliveries of Bell Bakeries bread each day except Sunday, usually before the witness got up. On the morning of the 14th the bread, as usual, was left in the rack under an awning at the front of the store. Immediately after the wreck he found Bell Bakeries bread in the rack.

Two other bakeries made deliveries to him daily, but their deliveries were made between 11:00 and 12:30 in the daytime. Plaintiff's intestate was killed in the wreck.

F. T. Rolland testified that he lived about 10 miles south of Burney's store and bought bread from Bell Bakeries every morning except Sunday. The deliveries were made about six o'clock; that deliveries had been made each morning between October and the day of the accident. On that day the defendant Cook made the delivery in the afternoon rather than in the morning as usual.

The highway patrolman testified that he had a conversation with the defendant Cook about three o'clock on the afternoon of the accident; that Cook stated he delivered bread at Burney's store in the early morning, pulled out at an angle in front of north-bound traffic; that he looked in his side view mirror, didn't see any south-bound traffic, and continued on his journey. (The evidence was admitted against Cook only and the jury was instructed accordingly.)

Other drivers who delivered bread at Burney's store testified they were not at the store in the early morning on the day of the accident. Evidence was offered tending to show that the Bell Bakeries' bread truck had pink or red markings and that other bread trucks had different markings.

The defendants, in their joint answer, say:

"It is admitted that Miller J. Cook served, as an employee of the said Bell Bakeries, Inc., grocery stores on N. C. Highway 87, and including Simon A. Burney, . . .

"It is admitted that on 14 March 1955 Miller J. Cook as an employee of Bell Bakeries, Inc., sold and delivered certain of the products of said Bell Bakeries, Inc., and that the truck used by said Miller J. Cook in connection with said business was the property of said Bell Bakeries, Inc., . . .

"It is admitted that sometime between 6 a.m. and 6:30 a.m. on 14 March 1955 the said Miller J. Cook left products of Bell Bakeries, Inc., at the store of Simon A. Burney, at which time the said Simon A. Burney had not opened for business, . . ."

The evidence and admissions in the pleadings are sufficient to support these findings: (1) At the time of the accident Cook was agent of and driving the truck for Bell Bakeries, Inc.; (2) he drove the truck into the path of the tanker operated by plaintiff's intestate when such movement could not be made in safety; (3) by so doing Cook placed plaintiff's intestate in a position of sudden peril and in his efforts to extricate himself he was killed; (4) the defendants' negligent conduct was the

proximate cause or one of the proximate causes of the accident and death of plaintiff's intestate. The evidence was sufficient to warrant the jury in answering the first issue for the plaintiff. *Price v. Gray, ante,* 162.

On the second issue the burden of showing contributory negligence was on the defendants. *Murphy v. Coach Co.,* 200 N.C. 92, 156 S.E. 550. The jury found the defendants did not carry this burden and the evidence does not show contributory negligence as a matter of law. *Jones v. Bagwell,* 207 N.C. 378, 177 S.E. 170. The evidence was sufficient to support the verdict. The motion for nonsuit was properly denied.

The defendants insist evidence relating to the delivery of bread by other bakeries, the testimony of their drivers with respect to their times of delivery at Burney's store, and the description of the trucks used in making the deliveries was all erroneously admitted. The admissibility is challenged by 89 exceptions. The defendants contend that the Bell Bakeries' truck was not involved in the accident in any way and the evidence fails to show that it actually came in contact with either of the tankers which were wrecked. But the evidence offered and admitted were circumstances tending to identify the truck as belonging to and operated by the defendants. Circumstantial evidence was admitted for that purpose. The rule with respect to such evidence is thus stated: "While he (the judge) shall reject as too remote every fact which merely furnishes a forceful analogy or a conjectural inference, he may admit as relevant the evidence of all those matters which shed a real, though perhaps an indistinct and feeble light on the question at issue." *S. v. Stone,* 240 N.C. 606, 83 S.E. 2d 543. Error does not appear and the exceptions cannot be sustained.

The defendants' assignment of error No. 15 is based on seven exceptions to the testimony of the highway patrolman who interviewed the defendant Cook in the afternoon of the day on which the accident occurred. At the time the evidence was admitted the court instructed the jury that Cook's statements were not admissible against the corporate defendant and could not be considered against it. There can be no question but that they were admissible against the defendant Cook who made them.

The defendants bring forward 50 exceptions to the court's charge. Only a few paragraphs escape their exceptive assignments. Those free of objection deal with the issues, burden of proof, measure of damages, constituent elements of actionable negligence, and the admissibility of photographs. Unobjected to are the instructions given in obedience to defendants' request. Virtually all of the court's recital of the evidence and his statement of the contentions of the parties are challenged, though no request for correction was made or called to the

court's attention before the case was submitted to the jury. The failure constituted a waiver. *Peek v. Trust Co.*, 242 N.C. 1, 86 S.E. 2d 745; *Moore v. Bezalla*, 241 N.C. 190, 84 S.E. 2d 817; *Brewer v. Brewer*, 238 N.C. 607, 78 S.E. 2d 719.

Upon careful examination the charge appears to have covered all essential elements of the case and is in substantial accord with applicable principles of law. The careful review of this record has been difficult and time consuming. More than 200 exceptions have been examined. The assignments of error alone cover 68 pages of the record. If there is grain of merit in this appeal it is covered up in the chaff.

No error.