THOMAS HUFF AND WIFE, BARBARA F. HUFF v. BRANTLEY THORNTON, CENTRAL CAROLINA FARMERS EXCHANGE, INC., JOSEPH MILTON FULTON, SR., AND J. W. JENKINS, INC.

### No. 4

(Filed 14 April 1975)

1. **Evidence § 56— damaged house — evidence of value — expert opinion testimony**

    In an action to recover damages for injury to plaintiffs' house caused when defendant's truck struck the corner of it, the trial court did not err in allowing two witnesses who were contractors and one witness who was engaged in the real estate and insurance business to testify as to their respective opinions concerning the value of the house before and after the accident, or in permitting them to testify as to the probability that such a blow, delivered to the corner of the building, would "ramshackle" the whole house inside, loosen nail joints throughout the house and knock the entire house out of alignment, since these witnesses were obviously better qualified by their occupational experience than was the jury to form an opinion as to the nature and extent of the damage, the practicability of repair, and the fair market value of the house before and after it was struck by the truck.

2. **Evidence § 56— opinion testimony as to value — no inspection of house prior to accident**

    Where witnesses inspected plaintiffs' house after the accident and from such inspection determined the size and design of the house, the

1

Huff v. Thornton

nature of the materials used in its construction, and its probable gen-
eral condition prior to the observable results of the accident, the fact
that they had not actually visited the house prior to the occurrence
would go to the weight to be given their estimate of its prior value,
not to its admissibility.

**3. Evidence § 45— opinion as to value — witness not expert**

Even though not an expert, a witness who has knowledge of value
gained from experience, information and observation may give his
opinion of the value of specific real property with which he is familiar.

**4. Evidence § 56— opinion testimony as to value — procedure for eliciting
testimony**

While a witness, asked if he has an opinion as to value, should
first state that he does and should then be asked to give that opinion,
the mere fact that a witness in this action, in response to the first
question, proceeded to express his opinion and the court overruled the
motion to strike the answer as not responsive is not ground for a new
trial.

**5. Damages § 13— damaged house — entry of rats and roaches — increased
use of heating oil — relevancy of evidence**

In an action by plaintiffs to recover for damages to their home
caused when defendants' truck struck it, the trial court did not err in
allowing plaintiffs to testify with reference to the increase in their
consumption of heating oil since their house was damaged and with
reference to their difficulties with rats and roaches coming into the
house through holes and cracks resulting from the accident, since such
testimony was clearly relevant to the question of the nature and ex-
tent of the injury done to the house.

**6. Damages § 4— damage to real or personal property — recovery for loss
of use**

Even in the case of personal property, the impracticability of
repair does not bar recovery for loss of use of the property during the
period necessarily required for the acquisition of a replacement.

**7. Damages § 5— injury to house — items of damage recoverable**

It having been stipulated that the plaintiffs' residence was dam-
aged by the negligence of the defendants, the plaintiffs are entitled
to recover an amount sufficient to compensate them for all pecuniary
losses sustained by them, which are the natural and probable result
of the wrongful act and which are alleged in the complaint and shown
with reasonable certainty by the evidence; such losses include the dif-
ference between the fair market value of plaintiffs' residence before
and after it was struck by defendants' truck and the loss of use of
plaintiffs' home during the time necessary for its repair, and the trial
court did not err in allowing the male plaintiff to testify as to the
availability of other comparable lodging, its rental cost, the time re-
quired for repair or rebuilding of plaintiffs' residence and the cost of
moving.

Huff v. Thornton

**8. Trial § 13— jury view of damaged house discretionary matter**

In an action to recover for damage to plaintiffs' house caused when it was struck by defendants' truck, the granting or denial of defendants' motion to allow the jury to view the premises was within the discretion of the trial court.

**9. Damages § 15— injury to residence — sufficiency of evidence**

In an action to recover for injury to plaintiffs' residence, evidence was sufficient to submit to the jury issues as to the amount the plaintiffs were entitled to recover for damages to their residence and the amount they were entitled to recover for loss of its use where such evidence tended to show that the house was in excellent condition before it was struck by defendants' truck, a hole four feet square, cracks, loose nail joints and other damages resulted from the accident, plaintiffs offered expert evidence as to the value of the house before and after the accident, there was testimony that it would take twelve to fifteen months to repair the house, and rent for a comparable house was $150 per month.

**10. Trial § 11— jury argument — impropriety not prejudicial**

Statement of plaintiffs' counsel in his jury argument, "Since the defendants have agreed they are liable, why have they waited for two years to make recompense?" though improper argument, was not sufficiently prejudicial to require a new trial.

**11. Appeal and Error § 31— jury instructions — failure to object in trial court**

Where defendants failed to call to the attention of the trial court alleged errors in his jury instructions in his review of the evidence and statement of the parties' contentions, so as to permit correction thereof, such errors in the charge, if made, would not be basis for the granting of a new trial.

APPEAL by defendants from the decision of the Court of Appeals, reported in 23 N.C. App. 388, 209 S.E. 2d 401, in which the Court of Apeals, *Campbell, J.,* dissenting, found no error on the appeal of the defendants from *McLelland, J.,* at the 3 December 1973 Session of GRANVILLE.

The two corporate defendants are owners of trucks driven on 23 December 1971 by the two individual defendants. As the Jenkins truck, loaded with gasoline and driven by Fulton, was in the act of passing the Farmers Exchange truck, driven by Thornton, Thornton attempted to make a left turn into the driveway of a store owned by the plaintiff Thomas Huff. The Farmers Exchange truck collided with the Jenkins truck. The Jenkins truck thereupon ran off the highway, struck and demolished a parked 1963 Ford automobile owned by Thomas Huff alone. The Jenkins truck then continued on and struck, with great force, the corner of the brick veneer residence owned by

both plaintiffs as tenants by the entireties. In a single action the plaintiffs sued for damage to the autombile, damage to the house, loss of use of the house and other alleged injuries not pertinent to this appeal.

At the commencement of the trial, the defendants stipulated that the issue as to their joint liability to the plaintiffs should be answered in favor of the plaintiffs, leaving for trial only the issues as to damages. The jury found the damage to the house was $18,000, the damage to the automobile was $600 and the damage for loss of use of the house was $1,534. Judgment upon the verdict in the total sum of $20,134 was entered.

*Spears, Spears, Barnes, Baker & Boles by Alexander H. Barnes; and Young, Moore & Henderson by Joseph Yates III for defendant appellants.*

*Watkins, Edmundson & Wilkinson by William T. Watkins for plaintiff appellees..*

LAKE, Justice.

The defendants base their appeal upon 82 assignments of error, 52 of which are brought forward into their brief, the others being abandoned. Rule 28, Rules of Practice in the Supreme Court; *State v. Greene,* 278 N.C. 649, 180 S.E. 2d 789. It would serve no useful purpose to discuss, individually, the assignments of error which have been preserved. They present the following questions: (1) Was there error in the court's rulings upon the admission of evidence relating to the extent of the damage to the house? (2) Was there error in the court's rulings upon the admission of evidence relating to damages for loss of use of the house? (3) Was there error in denying the defendants' motion to have the jury view the premises? (4) Was there error in denying the defendants' motions for a directed verdict and for judgment notwithstanding the verdict? (5) Was there error in overruling the defendants' objection to argument made by counsel for the plaintiff? (6) Was there error in the court's instructions?

The plaintiffs' witness Clark, an experienced building contractor, testified that he inspected the plaintiffs' residence about two weeks after the accident. (In the meanwhile, no repairs of consequence had been made.) He described the damage he observed. Without objection, he testified that in his opinion the fair market value of the house and lot before the accident was

$26,895. Over objection, he testified that after the accident the lot had a value of $4,000 but the house, itself, had no market value and that it would take twelve months to replace or repair it. On cross-examination he testified that the house could not be restored to its pre-accident condition, the structure, itself, having been knocked out of line, and that it would be more practical to build a new one. Also on cross-examination, he testified that his figure of $26,895 for the fair market value of the house and lot was his estimate of the cost of replacing the house with a new one. Assignments of error directed to the overruling of objections to the testimony of this witness were among those abandoned. In any event, we perceive no error in these rulings of the trial court.

The plaintiffs' witness Daniel has for many years been engaged in the real estate and insurance business in Granville County and has built for sale and has sold a number of houses. He testified that he was familiar with prices of real estate in Granville County and had been to the plaintiffs' house. Their witness Morgan has been a general contractor for many years, building residential and commercial structures in Granville County and is familiar with construction prices and sales of such property in the county. He went to the plaintiffs' home on the day it was damaged and inspected it for the purpose of determining the extent of the damage. Their witness Dickerson has also been a building contractor for many years and he, too, examined the residence to determine the extent of the damage it had sustained.

[1]   There was no error in permitting these witnesses to testify as to their respective opinions concerning the value of the house before and after the accident, or in permitting them to testify as to the probability that such a blow, delivered to the corner of the building, would "ramshackle" the whole house inside, loosen nail joints throughout the house and knock the entire house out of alignment. These witnesses were obviously better qualified, by their occupational experience, than was the jury to form an opinion as to the nature and extent of the damage, the practicability of repair and the fair market value of the house before and after it was struck by the truck. Consequently, each was qualified to testify as an expert witness concerning these matters. *State v. Vestal*, 278 N.C. 561, 594, 180 S.E. 2d 755; *Paris v. Aggregates, Inc.*, 271 N.C. 471, 157 S.E. 2d 131; Stansbury's North Carolina Evidence (Brandis Revision), § 132.

Huff v. Thornton

[2-4] Although none of these witnesses testified to having been in the plaintiffs' residence prior to the damage, each inspected it thereafter and from such inspection could, of course, determine the size and design of the house, the nature of the materials used in its construction and its probable general condition prior to the observable results of the accident. The fact that they had not actually visited the house prior to the occurrence would go to the weight to be given their estimate of its prior value, not to its admissibility. Even though not an expert, a witness who has knowledge of value gained from experience, information and observation may give his opinion of the value of specific real property with which he is familiar. Stansbury's North Carolina Evidence (Brandis Revision), § 128. While a witness, asked if he has an opinion as to value, should first state that he does and should then be asked to give that opinion, the mere fact that the witness Morgan, in response to the first question, proceeded to express his opinion and the court overruled the motion to strike the answer as not responsive is not ground for a new trial. State v. Muse, 280 N.C. 31, 185 S.E. 2d 214.

The witness Morgan was asked if he had an opinion as to whether the house could have been repaired so as to put it back into the condition it was in prior to being struck by the truck. He replied: "Not exactly. It will always be racked, twisted. Anything that gets as much lick as a truck that large running into it is bound to knock it out of line. It cannot help it." The objection that the latter part of this answer is not responsive is without merit. The witness was entitled to explain the basis of his answer and thus show why the house could not have been repaired so as to restore it to its previous condition. There was likewise no error in permitting this witness to be questioned on direct examination and the defendant's witness Lawrence to be questioned on cross-examination for the purpose of showing that their respective estimates of repair costs did not include the cost of straightening and realigning the whole house.

[5] The defendants objected to questions directed to Mr. and Mrs. Huff, the plaintiffs, with reference to the increase in their consumption of heating oil since their house was damaged and with reference to their difficulties with rats and roaches coming into the house through holes and cracks resulting from the accident, on the ground that such testimony was not relevant and was designed only to excite the sympathy of the jury. There is no merit in these objections. The witnesses had previ-

ously testified that a hole four feet square had been knocked in the brick veneer and to a crack through the wall into which a blanket had to be stuffed to keep out the cold. All of this testimony was clearly relevant to the question of the nature and extent of the injury done to the house. It was so limited by the judge in his charge to the jury.

The fact that the plaintiffs' witnesses based their estimates of value prior to damage upon their estimates of the cost of reproducing such a house new, or, as in the case of witness Daniel, less a reasonable allowance for depreciation, does not make their estimate of value inadmissible. *Peterson v. Power Co.,* 183 N.C. 243, 111 S.E. 8. The failure of the witness to take into account depreciation or other relevant circumstances such as location, size and design is a matter to be developed on cross-examination and goes to the weight of the testimony, not to its admissibility. The cost of construction of a like structure is relevant to its value, though not conclusive evidence thereof.

[6] The defendants contend that the theory of the plaintiffs' case is that their house was so severely damaged that it would not be practicable to attempt to repair it and so the house must be entirely replaced. For this reason they contend that the plaintiffs are not entitled to recover, in addition to damages for the injury to the house, further damages for loss of its use during the period of such rebuilding. They cite *Roberts v. Freight Carriers,* 273 N.C. 600, 160 S.E. 2d 712, as authority for their proposition that while damages for loss of use of property, while it is being repaired, are recoverable, when the property is completely destroyed, damages for loss of use are not proper. Our opinion in that case does not support their position in this respect. There, speaking through Justice Sharp, now Chief Justice, this Court said:

> "In general, the right to recover for loss of use [of a motor vehicle] is limited to situations in which the damage to the vehicle can be repaired at a reasonable cost and within a reasonable time. If the vehicle is totally destroyed as an instrument of conveyance or if, because parts are unavailable or for some other special reason, repairs would be so long delayed as to be improvident, the plaintiff must purchase another vehicle. In this situation, *he would be entitled to damages for loss of use only if another vehicle was not immediately obtainable* and, in consequence, he suffered loss of earnings during the interval between the accident

and the acquisition of another vehicle. The interval would be limited to the period reasonably necessary to acquire the new vehicle." (Emphasis added.)

Thus, even in the case of personal property, the impracticability of repair does not bar recovery for loss of use of the property during the period necessarily required for the acquisition of a replacement. The Supreme Court of California so held in *Reynolds v. Bank of America National T.&S. Ass'n,* 53 Cal. 2d 49, 345 P. 2d 926; *In Guide v. Hudson Transit Lines,* 178 F. 2d 740 (3d Cir.) ; and in *Louisville & I.R. Co. v. Schuester,* 183 Ky. 504, 209 S.W. 542, the holdings were to the same effect.

Where it is not practicable to repair the damaged article and a replacement is readily obtainable, as is the case with a motor vehicle under ordinary circumstances, the rule requiring an injured party to take all reasonable steps to minimize his damages limits the recovery to the fair market value of the destroyed property; i.e., the difference between its value before and after the injury. In such case no additional recovery for loss of use of the damaged article is proper because such damage could have been avoided by prompt replacement. This principle has no application to the present case since a brick veneer residence, such as that of the plaintiffs, is not instantly replaceable when damaged beyond practicable repair. One does not go to the neighborhood store, or dealer, and buy one in stock. Assuming another existing house, similar in design, size and quality could be purchased, it would not be a replacement for there would, at least, be a difference in location. In the instant case, the location of the plaintiffs' residence was of prime importance to them because it was immediately adjacent to Mr. Huff's place of business.

[7]   It having been stipulated that the plaintiffs' residence was damaged by the negligence of the defendants, the plaintiffs are entitled to recover an amount sufficient to compensate them for all pecuniary losses sustained by them, which are the natural and probable result of the wrongful act and which are alleged in the complaint and shown with reasonable certainty by the evidence. *Steffan v. Meiselman,* 223 N.C. 154, 25 S.E. 2d 626; Strong, N. C. Index 2d, Damages, §§ 5 and 6. See also: Note, 35 Cornell L.Q. 862, 866, and Note, 19 Fordham L. Rev. 223, 225. In addition to the loss of the automobile, which is not in question upon this appeal, the plaintiffs have lost, as a direct and natural result of the defendants' negligence, the difference between the fair market value of their residence before and after it was

struck by the truck. This they are entitled to recover. *Paris v. Aggregates, Inc., supra.* The defendants do not contend otherwise, assuming the evidence as to the amount of such loss is sufficient. To stop there would not fully compensate the plaintiffs for the losses sustained by them as a direct and natural result of the negligence of the defendants. Another such result of the negligent damage to or destruction of the house is that the plaintiffs cannot have the use of their house during the time reasonably necessary for its repair or replacement and must obtain lodging elsewhere for such period of time. For this loss also they are entitled to recover from the wrongdoers, the burden being upon the plaintiffs to establish the amount of such loss with reasonable certainty. *Trucking Co. v. Payne,* 233 N.C. 637, 65 S.E. 2d 132.

The plaintiffs having alleged the loss of the use of their home during the period necessary for its repair as an element of their damages, there was no error in permitting Mr. Huff to testify, over objection, as to the availability of other comparable lodging, its rental cost, the time required for repair or rebuilding of the Huff residence and the cost of moving. These are elements of damage flowing from the plaintiffs' loss of use of their own residence. Witness Clark, a building contractor, also testified as to the time it would take to replace the damaged house.

We find in the rulings of the trial court on the admission of evidence, assigned as error by the defendants, no basis for a new trial.

[8] The granting or denial of the defendants' motion to allow the jury to view the premises was within the discretion of the trial court. *Paris v. Aggregates, Inc., supra; Highway Com. v. Hartley,* 218 N.C. 438, 11 S.E. 2d 314. No abuse of that discretion is shown in this instance and, consequently, the denial of the motion was not error.

There was no error in the denial of the defendants' motions for a directed verdict and for judgment notwithstanding the verdict. As we said in *Dickinson v. Pake,* 284 N.C. 576, 583, 201 S.E. 2d 897:

> "A motion for a directed verdict under Rule 50(a) presents substantially the same question as formerly presented by motion for judgment of nonsuit. *Cutts v. Casey,* 278

N.C. 390, 180 S.E. 2d 297 (1971) ; *Kelly v. Harvester Co.,* 278 N.C. 153, 179 S.E. 2d 396 (1971). In passing upon such motion at close of plaintiffs' evidence in a jury case, as here, the evidence must be taken as true, considered in the light most favorable to plaintiffs, and may be granted only if, as a matter of law, the evidence is insufficient to justify a verdict for the plaintiffs. *Younts v. Insurance Co.,* 281 N.C. 582, 189 S.E. 2d 137 (1972) ; *Adler v. Insurance Co.,* 280 N.C. 146, 185 S.E. 2d 144 (1971) ; *Cutts v. Casey, supra; Kelly v. Harvester Co., supra;* 5A Moore's Federal Practice, para. 50.02[1] (2d ed. 1971).

\*     \*     \*     \*

" 'The propriety of granting a motion for judgment notwithstanding the verdict is determined by the same considerations as that of a motion for a directed verdict \* \* \*.' Sizemore, General Scope and Philosophy of the New Rules, 5 Wake Forest Intramural L. Rev. 1, 41 (1969).

So, a motion for judgment notwithstanding the verdict is simply a motion that judgment be entered in accordance with the movant's earlier motion for a directed verdict and notwithstanding the contrary verdict actually returned by the jury. Rule 50(b), Rules of Civil Procedure; *Summey v. Cauthen,* 283 N.C. 640, 197 S.E. 2d 549 (1973)."

[9] The defendant contends that the plaintiffs' evidence was not sufficient to permit the court to submit to the jury the issues as to the amount the plaintiffs are entitled to recover for damages to their residence and the amount they are entitled to recover for loss of its use, it being stipulated that the property was damaged by the negligence of the defendants. We find no merit in this contention.

The testimony of the two plaintiffs was that their brick veneer house, the lay-out of which Mrs. Huff described, was in excellent condition immediately prior to its being struck by the truck, the floors being tight, the plastering uncracked with the exception of a single small crack, the roof being only two months old and the house having been freshly painted, inside and out. After the truck struck the house, their evidence was that a hole four feet square was knocked in the brick veneer, the roof was pushed up at one point and sagged in the middle, doors would not open and close, the house was out of line, nail joints throughout the house were loosened, built-in cabinets were destroyed,

floors were loose and had cracks, twice as much fuel oil was required to heat the house comfortably, and various cracks existed in other parts of the brick veneer.

Experienced building contractors testified that they had examined the house and it was so badly damaged that it was not practicable to repair it. Witness Clark, an experienced building contractor, testified that within two weeks after the accident he inspected the house, describing the damage observed by him, and that, in his opinion, the fair market value of the house, exclusive of the lot, before it was struck was $22,895, and that it had no market value after the accident. Witness Morgan, also an experienced general contractor, testified that he inspected the house immediately after the accident, describing the damages observed by him, and that the market value prior to the damage was between $26,000 and $27,000 and after the accident was $5,000 "if you could have found a buyer." Witness Dickerson, another experienced building contractor, testified that he inspected the house not long after the accident, describing the damages observed by him, and that, in his opinion, it was not repairable. Witness Daniel, experienced in the real estate business, testified that, in his opinion, the house, apart from the lot, had a fair market value prior to the accident of $25,800, after subtracting depreciation, and after the accident it had a fair market value of $5,800.

As to the amount of damage attributable to the loss of use of the house, Mr. Huff and Mr. Clark testified that it would take from twelve to fifteen months to repair the house; i.e., to rebuild it. Mr. Huff further testified that the rent for a comparable house was $150.00 per month.

This evidence was ample to permit the jury to determine the amount of the plaintiffs' damages and to require the submission to the jury of the issues as to damages. The jury was not compelled to accept, and did not accept, the precise amounts suggested by any of the witnesses.

[10] In the course of his argument to the jury, counsel for the plaintiffs said:

"Since the defendants have agreed they are liable, why have they waited for two years to make recompense?"

The court overruled the objection of the defendants to this portion of the argument. While this statement by counsel for the

plaintiffs was not pertinent to the issues submitted to the jury and cannot be deemed proper argument, we do not deem it sufficiently prejudicial to justify the granting of a new trial.

[11] The defendants' assignments of error directed to the court's review of the evidence and statement of the defendants' contentions in the charge to the jury are without merit. No error in the charge in either of these respects was called to the attention of the court at the time so as to permit correction thereof. Consequently, such errors in the charge, if made, and we find none of any consequence, would not be basis for the granting of a new trial. *Lewis v. Barnhill,* 267 N.C. 457, 468, 148 S.E. 2d 536; *Brown v. Brown,* 264 N.C. 485, 141 S.E. 2d 875; *Morgan v. Bell Bakeries, Inc.,* 246 N.C. 429, 98 S.E. 2d 464; *Moore v. Bezalla,* 241 N.C. 190, 84 S.E. 2d 817; *State v. Lambe,* 232 N.C. 570, 61 S.E. 2d 608.

As to the amounts recoverable for damage to the house and damage to the automobile, the court instructed the jury:

"In each instance the measure of compensatory or monetary damages is the difference between the fair market value of the property damaged immediately before it was damaged and its fair market value immediately after it was damaged. And fair market value, ladies and gentlemen, is in law the amount which would be agreed upon as a fair price by an owner who wishes to sell but is not obliged to do so, and a buyer who wishes to buy but is not compelled to do so. In determining fair market value, you should fairly weigh and consider all of the evidence the parties have presented to you."

In this instruction there was no error and the defendants do not contend otherwise.

The court specifically instructed the jury, correctly, that the plaintiffs' evidence as to the entry of rats and roaches into the house and as to the increased difficulty of heating it could be considered by the jury only as descriptive of the nature of the damage to the house and not as a basis for an award of additional compensation for these circumstances. It also instructed the jury:

"You should also consider in determining fair market value the evidence of the parties relating to the costs of repairing the house and the costs of rebuilding the house. And

finally, you should weigh and consider the opinions expressed by the various witnesses as to before and after values and the explanations that these witnesses gave, particularly on cross-examination as to the bases for their opinions."

In this there was no error. The instruction left for the jury's consideration the possible discrepancy between replacement cost and fair market value.

As to the amount to be awarded, if any, for the loss of use of the house, the court charged the jury:

"As to the fourth issue, what amount, if any, are plaintiffs entitled to recover for loss of use of real property? I charge that you must be satisfied by the evidence and by its greater weight of two things: First, that the plaintiffs' house was damaged to such an extent that repairs cannot be made while plaintiffs continue to live in it or that the only practical repairs will amount to reconstruction so that it will be necessary for plaintiffs to move out of the house for a reasonable period of time while repairs are being made; and secondly, that the plaintiffs have proved with reasonable certainty the amount of the loss they will suffer by reason of the temporary loss of use of their residence.

"If you are not satisfied that plaintiffs' house was so damaged that the plaintiffs must move out for a reasonable period of time while repairs are being made, you must answer the fourth issue, nothing, and not further consider it.

"If you are so satisfied you must consider whether you can determine from the evidence of the plaintiffs with reasonable certainty the amount due the plaintiffs for temporary loss of the use of their house, keeping in mind that you may not base an award on mere speculation and conjecture.

"If you are not satisfied that you can do so, you must answer the issue, nothing, even though you may have found that moving out will be necessary and that some loss will be sustained. This is for the reason that the plaintiffs have the burden of proving loss and may not recover any amount if they fail to present proof as I have defined it to you.

\*     \*     \*     \*

"If you are so satisfied, your answer to the fourth issue should be such total amount as will reasonably com-

pensate the plaintiffs for the added expenses caused by their temporary loss of use of their residence."

In this instruction there was no error.

We have carefully considered all of the assignments of error not abandoned by the defendants and find no merit therein.

No error.