JEFFREY PHILLIPS, D.V.M., PH.D., AND WIFE, DAWN PHILLIPS, PLAINTIFFS v.
NORTH CAROLINA STATE UNIVERSITY, DEFENDANT

No. COA09-1720

(Filed 3 August 2010)

**Tort Claims Act— lost profits from breeding horse—consequential damages**

The full Industrial Commission did not err in its supplemental decision and order in a Tort Claims Act case by holding that plaintiffs were entitled to consequential damages amounting to the loss of profits from one breeding cycle in addition to the market value cost to replace their rare horse. The proper measure

**PHILLIPS v. N.C. STATE UNIV.**

[206 N.C. App. 258 (2010)]

of consequential damages in North Carolina (NC) for reproducing livestock is the value of the animal under NC law at the time of death and the consequential damages, if any, that a plaintiff may incur between the time of the death of the animal until such time that a replacement of like kind and quality can be found and purchased.

Appeal by plaintiffs and defendant from Decision and Order entered 5 October 2009 by the North Carolina Industrial Commission. Heard in the Court of Appeals 9 June 2010.

*Knott, Berger & Miller, L.L.P., by Kenneth R. Murphy, III, for plaintiff appellants.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Amar Majmundar, for defendant cross-appellant.*

HUNTER, JR., Robert N., Judge.

This case is before our Court a second time to determine whether Jeffrey Phillips, D.V.M., Ph.D., and his wife, Dawn Phillips (collectively "plaintiffs"), are entitled to the loss of profits from the lost opportunity to breed their rare horse, Menetti, over the remainder of her reproductive years. After review, we affirm the Supplemental Decision and Order entered by the Full Commission, and hold that plaintiffs are entitled to consequential damages amounting to the loss of profits from one breeding cycle in addition to the market value cost to replace Menetti.

## I. FACTUAL AND PROCEDURAL HISTORY[1]

On 3 May 2004, plaintiffs brought their rare broodmare Knabstrupper horse, Menetti, for boarding at the Equine Educational Unit ("EEU"), a horse breeding management facility operated by North Carolina State University ("defendant"). The EEU boards broodmares like Menetti while they are bred. Menetti was a young broodmare in excellent health, and was boarded from 3 May to 25 May 2004, during which time Justine Smith, a managing supervisor at the EEU, and other EEU employees were exclusively responsible for the care of Menetti.

---

1. This case is the second time this Court has addressed these facts, and therefore the history set forth within is abbreviated. For a more complete discussion of the facts and procedural history, see *Phillips v. North Carolina State University*, No. COA08-1029, 2009 WL 2371088 (N.C. Ct. App. Aug. 4, 2009) (unpublished) [*Menetti I*].

During this time, the temperatures in Raleigh consistently climbed above 90 degrees Fahrenheit, with high humidity and low amounts of precipitation. On the evening of 25 May 2004, within one hour of being released from the EEU, Menetti died during transport in a horse trailer to the home of plaintiffs. Two pathologists from the North Carolina State University School of Veterinary Medicine, Dr. Kevin Douglas Woolard and Dr. Donald J. Meuten, performed a necropsy (animal autopsy) on Menetti the morning following her death. Drs. Woolard and Meuten made clinical findings which were indicative of dehydration and led them to the conclusion that Menetti likely died as a result of heat stress.

In *Menetti I*, this Court affirmed in part the rulings from below holding defendant was the direct and proximate cause of Menetti's death through negligence. However, on the issue of compensatory damages, this Court found that the Full Commission did not consider the Deputy Commissioner's findings of fact or conclusions regarding plaintiffs' lost opportunity to breed Menetti. Accordingly, we held:

[A]s the Commission's findings are insufficient to determine whether the proper measure of compensatory damages should include Plaintiffs' lost opportunity to breed Menetti, we remand this matter to the Full Commission with instructions to make findings of fact and conclusions of law concerning the issue of Plaintiffs' lost opportunity to breed Menetti.

*Menetti I*, 2009 WL 2371088, at *8.

Upon remand, the Full Commission considered further the Deputy Commissioner's findings of fact:

62. The economic value of a foal carried by a Knabstrupper mare comparable to Menetti is conservatively valued at $9,000.

. . . .

70. As of April 13, 2007, the date of trial of this matter, there were no Knabstrupper mares comparable to Menetti available for sale in the United States, a comparable horse could only be purchased in Europe, the exchange rate between the Euro and the U.S. dollar was approximately a 1:1.33 ratio, and the total cost to replace Menetti with a comparable Knabstrupper mare was approximately $50,000 in U.S. currency.

On 5 October 2009, the Full Commission entered its Supplemental Decision and Order, finding in part that Menetti's foals were val-

ued at $9,000 each, and that plaintiffs were entitled to the loss of profit from one breeding cycle (i.e., one foal) in addition to the $50,000 replacement cost of Menetti, totaling $59,000 in compensatory damages.

On 6 November 2009, plaintiffs timely filed notice of appeal to this Court, arguing that the Full Commission erred by awarding plaintiffs consequential damages from the loss of profits of only one breeding cycle as the proper measure of consequential damages for the lost opportunity to breed Menetti. On 16 November 2009, defendant timely filed a cross-appeal, arguing the Full Commission erred in awarding any consequential damages.

## II. ANALYSIS

### A. *Jurisdiction and Standard of Review*

This appeal is properly before this Court from a final decision of the North Carolina Industrial Commission pursuant to N.C. Gen. Stat. § 7A-29(a) (2009). When considering an appeal from the Industrial Commission under the Tort Claims Act, this Court is limited to two questions: (1) whether competent evidence exists to support the Commission's findings of fact, and (2) whether the Commission's findings of fact justify its conclusions of law and decision. *Simmons v. N.C. Dept. of Transportation*, 128 N.C. App. 402, 405-06, 496 S.E.2d 790, 793 (1998). Pursuant to N.C. Gen. Stat. § 143-293, a claimant may appeal the decision of the Full Commission, but such appeal shall be for errors of law only and findings of fact of the Commission shall be conclusive if there is any competent evidence to support them. N.C. Gen. Stat. § 143-293 (2009). However, when the Full Commission's findings of fact " 'are insufficient to determine the rights of the parties, the [C]ourt may remand to the Industrial Commission for additional findings.' " *Johnson v. Southern Tire Sales & Serv.*, 358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004) (quoting *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982)). This Court's review of the Industrial Commission's conclusions of law is *de novo. Starco, Inc. v. AMG Bonding and Ins. Services*, 124 N.C. App. 332, 336, 477 S.E.2d 211, 215 (1996).

### B. *Compensatory Damages*

Plaintiffs argue that the Full Commission erred in concluding that the proper compensatory damages owed by defendant are the lost profit for only one breeding cycle. Plaintiffs contend that the consequential damages should include an amount sufficient to replace the

lost opportunity to breed Menetti during the remainder of her breeding years, as previously ordered by Deputy Commissioner Taylor. Defendant argues that the Full Commission erred in awarding plaintiffs $9,000 in consequential damages for the loss of one breeding cycle when there was no evidence presented to establish that plaintiffs either (1) had replaced Menetti with another horse, (2) were attempting to replace Menetti, or (3) had established a reasonable time period in which to do so.

After review, we hold that the award for one breeding cycle was supported by competent evidence, and that the Full Commission's findings on this issue support its conclusions of law. We accordingly affirm the Supplemental Decision and Order of the Full Commission.

The issues on appeal concerning consequential damages revolve around the following findings entered by the Full Commission in its Supplemental Decision and Order:

1. Immediately after Menetti's death, a veterinarian harvested the animal[']s ovaries to determine if any impregnated embryo could be saved by fertilizing with another mare. The post mortem procedure revealed Menetti was not impregnated at the time of her death.

2. Rebecca Pennington's appraisal includes a substantial allowance for the fact that Menetti's genetic characteristics greatly increasing [sic] her value as a broodmare and that a comparable broodmare is marketed rarely. Pennington located only one comparable Knabstrupper for sale in the European market. No testimony establishes when this mare became available on the market. The record only discloses that Pennington, upon her engagement as an expert witness, was able to locate one comparable Knabstrupper for sale in the European Market when preparing her appraisal in 2005.

3. No testimony at trial established whether Plaintiffs: (1) had replaced Menetti with a comparable broodmare, or [(2)] were capable of replacing Menetti. Additionally, no testimony was proffered establishing a reasonable period of time in which to replace Menetti under the particular facts and circumstances of this civil action.

4. While Pennington's highly credible testimony establishes the value of Menetti's future foals at $9,000 each, the record is devoid of evidence as to the future costs associated with the

PHILLIPS v. N.C. STATE UNIV.

[206 N.C. App. 258 (2010)]

pregnancy and delivery of foals from which profit can be determined over Menetti's expected brood life.

In drawing its first finding of fact, the Full Commission considered the testimony of Dr. Carlos Pinto, a doctor of veterinary medicine and an assistant professor at the North Carolina State University College of Veterinary Medicine, who attempted to harvest a viable impregnated embryo from Menetti to determine any further worth of the carcass. In support of its second finding of fact, the Full Commission considered the testimony of Rebecca Pennington, a Certified Equine Appraiser and President of the American Knabstrupper Association, who performed the valuation and determined the replacement value of Menetti for plaintiffs. As to its third finding of fact, the Full Commission determined from examination of the record that no testimony was presented as to whether plaintiffs had replaced Menetti, were capable of replacing Menetti, or had established a reasonable time period for obtaining a replacement. In drawing its fourth finding of fact, the Full Commission examined the record and found no evidence as to future costs associated with the pregnancy and delivery of foals from which profit could be determined over Menetti's remaining reproductive years.

This evidence is clearly competent to support the Full Commission's findings, and as a result, these findings are binding under our standard of review. We next examine *de novo* whether the Full Commission applied the correct law, and whether the findings support the Full Commission's conclusions.

In its Supplemental Decision and Order, the Full Commission concluded as a matter of law:

1. The measure of damages for loss of livestock is the value of the animal alive just prior to its loss, minus the value, if any, of the animal's carcass when there is evidence of value of the carcass. *Griner v. Smith*, 43 N.C. App. 400, 259 S.E.2d [383] (1979).

2. Plaintiffs[] contend their consequential damages include the present value of the loss of Menetti's future foals is not well taken. As Plaintiffs' contention appears to be an issue of first impression in North Carolina, persuasive authority for the proper determination of damages in a breeding animal is found in *Snyder v. Bio-lab, Inc.*, 405 N.Y.S.2d 596, 597-98 (1978) (emphasis added) (considering the proper damages for cows). The *Snyder* Court held:

a. As with personal property generally, the measure of damages for injury to, or destruction of, an animal is the amount which will compensate the owner for the loss and thus return [the owner], monetarily, to the status . . . before the loss. Where the animal has a market value, the market value at the time of the loss . . . will generally be the measure applied. Any special value, particular qualities, or capabilities are generally considered as factors making up the market value. *For example, when an owner has received the market value of an animal, he will have been compensated for any use he might have made of the animal for breeding purposes.* The market value may be enhanced because the animal is carrying unborn young, but the young have no value apart from the mother. . . .

i. . . . .

ii. In addition, plaintiffs are entitled to recover the loss of profit **for the time period required to replace** the slaughtered cows with cows of equal quality.

iii. . . .

iv. The fair market value of the slaughtered cows does not adequately compensate the plaintiffs for their loss. They are entitled to the profit that the 39 cows, the best milk[] producers in the herd, would have generated until replacement cows of equal quality were available. Proof establishes that replacement cows of comparable quality were available in the market 3 months subsequent to the accident. . . .

3. The decision in *Snyder* is supported by other persuasive authority. In *Missouri v. Farmers Ass'n v. Kempker*, 726 S.W.2d 723, 726 (1987) (emphasis added), the Supreme Court of Missouri held that "there may be *no recovery for future milk and calf production of a cow which has been disposed of, after a replacement of comparable capacity has been or could have been acquired.*" The Supreme Court of Utah has also reached the same measure of damages in *Park v. Moorman Mfg. Co.*, 121 Utah 339 (1952), stating that "damages include both the market value of the animals destroyed and lost profits for the period in which there was a loss of use before the replacements could prudently be obtained."

4. Given these persuasive authorities the applicable damages in the instant case as consequential damages are the loss of profits from Menetti's foal for the period from the date of loss until a comparable replacement has been or could have reasonably been acquired. The application of this measure of damages is entirely consistent with the long articulated principle of law in this State that the duty to mitigate damages requires that an injured plaintiff in a tort action must exercise reasonable care and diligence to avoid or lessen the consequences of the defendant's wrong. ***Applying the stated law, Plaintiffs have proven by the greater weight of the evidence the loss of profit for one breeding cycle.*** N.C. Gen. Stat. §§ 143-291 through -300.1A.

(Emphasis added.)

We believe the Full Commission's reasoning in its conclusions of law is sound. The cases cited by the Full Commission appear to be in accordance with the general rule. *See generally* O.H. Webster, Annotation, *Measure and elements of damages, in action other than one against carrier, for conversion, injury, loss, or destruction of livestock,* 79 A.L.R.2d 677 § 10 (1961); *see also McPherson v. Schlemmer,* 749 P.2d 51 (Mont. 1988) (cow breeders entitled to fair market value and lost profits from time cows killed until replacement cows of like quality could reasonably be purchased by plaintiffs). Moreover, the measure of consequential damages for livestock stated by the Full Commission appears to be in accordance with existing law in North Carolina. *King v. Britt,* 267 N.C. 594, 597, 148 S.E.2d 594, 597 (1966) (where a plaintiff is injured by the tortious conduct of a defendant, "the plaintiff is entitled to recover the present worth of all damages naturally and proximately resulting from [the] defendant's tort"); *Phillips v. Chesson,* 231 N.C. 566, 571, 58 S.E.2d 343, 347 (1950) ("The objective of any proceeding to rectify a wrongful injury resulting in loss is to restore the victim to his original condition, to give back to him that which was lost as far as it may be done by compensation in money."); *Olivetti Corp. v. Ames Business Systems, Inc.,* 319 N.C. 534, 547-48, 356 S.E.2d 578, 586 (1987) ("As part of its burden, the party seeking damages must show that the amount of damages is based upon a standard that will allow the finder of fact to calculate the amount of damages with reasonable certainty."). *Lumber Co. v. Power Co.,* 206 N.C. 515, 522, 174 S.E. 427, 431 (1934) ("Where the profits lost by defendant's tortious conduct, proximately and naturally flow from his act and are reasonably definite and certain, they are recoverable; those which are speculative and contingent, are not.").

Nevertheless, plaintiffs cite two cases in support of the argument that they are entitled to consequential damages in an amount equivalent to the loss of profits from the future opportunity to breed Menetti over her remaining reproductive years. In the first case plaintiffs cite, the North Carolina Supreme Court held that the defendant was negligent in delivering the wrong cleaning compound to clean the floors of the plaintiff's grocery store, resulting in the contamination of the store's inventory and closure of the store for several months. *See Champs Convenience Stores v. United Chemical Co.*, 329 N.C. 446, 406 S.E.2d 856 (1991). Plaintiffs were awarded damages, including lost profits for the period the grocery store was closed for cleanup as well as overhead expenses for rent and mortgage payments. *Id.* at 459-64, 406 S.E.2d at 864-66. The second case plaintiffs cite is *Huff v. Thornton*, 287 N.C. 1, 213 S.E.2d 198 (1975), where the plaintiff's home was struck and damaged by a truck negligently driven by defendant; and our Supreme Court held that the plaintiffs were entitled to compensation for the loss of use of their home while it was being repaired (i.e., comparable lodging and moving cost), as well as the difference in their home's market value before and after being struck.

We decline to apply these holdings to this case. The cases cited by plaintiffs do not deal with the loss of profits from animals or livestock. Each concerns damages derived from the tortious loss of profits due to lost use of real property. Real property is different from livestock, which is personal property, because real property is incapable of producing offspring. Thus, since we believe the authority cited by the Full Commission is more convincing, we hold the proper measure of consequential damages in this State for reproducing livestock is: (1) the value of the animal under North Carolina law at the time of death, and (2) the consequential damages, if any, that a plaintiff may incur between the time of the death of the animal until such time that a replacement of like kind and quality can be found and purchased. We now apply this rule to the case *sub judice*.

Concerning the first measure of damages, this Court has held that a horse raised for home use or for profit should be considered "livestock." *County of Durham v. Roberts*, 145 N.C. App. 665, 670, 551 S.E.2d 494, 498 (2001). This Court has further held that the appropriate measure of damages for the loss of livestock is the value of the animal alive just prior to its loss, minus the value, if any, of the carcass when there is evidence of the value of the carcass. *Griner*, 43 N.C. App. at 409, 259 S.E.2d at 389. Given that we have already held in *Menetti I* that the Full Commission properly found and concluded that the value of Menetti was $50,000, we next consider the conse-

quential damages under the second prong for which we previously remanded this case.[2]

Here, plaintiffs offered evidence supporting an award of the replacement market value of Menetti, plus any consequential damages arising from the time of Menetti's death until a replacement could prudently be obtained in accordance with the rule stated above. Rebecca Pennington testified that, as of 25 June 2005, there were no Knabstrupper mares comparable to Menetti available for sale in the U.S., and that a comparable horse could be purchased in Europe. The time of Menetti's death until Ms. Pennington's location of a comparable replacement was a little over one year. Since plaintiffs offered evidence showing that Menetti likely could have produced one foal during the year of replacement,[3] we conclude that there was competent evidence of consequential damages equaling the loss of profits from one breeding cycle, $9,000. These are the damages awarded by the Full Commission in the Supplemental Decision and Order. Since the Full Commission's findings support its conclusions of law, the Full Commission's damages award must be affirmed under our standard of review. Plaintiffs' argument is accordingly overruled.

## III. CONCLUSION

Because plaintiffs adduced sufficient evidence showing that they were entitled to consequential damages for one year, the findings of fact set forth by the Full Commission in the Supplemental Decision and Order are supported by competent evidence. These findings support the Full Commission's conclusions of law, and accordingly, the Supplemental Decision and Order of the Full Commission must be

Affirmed.

Judges STEELMAN and STEPHENS concur.

---

2. Defendant contends in this appeal that the compensatory damages for the replacement of Menetti should now be reduced to $45,639.00, the original valuation of Menetti by Rebecca Pennington. In accordance with N.C.R. App. P. 10(a) (2010), the scope of our review is limited to the consideration of the assignments of error set out in the record on appeal. Because the $50,000 market valuation compensatory replacement damages for Menetti has not been assigned as error in the record at any point until now, the compensatory damages for the replacement value of Menetti must be left undisturbed as the law of the case. *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp. Co.*, 362 N.C. 191, 195-96, 657 S.E.2d 361, 364 (2008) ("[A] party's failure to properly preserve an issue for appellate review ordinarily justifies the appellate court's refusal to consider the issue on appeal.").

3. *Menetti I*, 2009 WL 2371088, at *3.